UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OSVALDO RAMOS,<br>    *Plaintiff*,<br><br>v.<br><br>AMGUARD INSURANCE COMPANY,<br>    *Defendant.* | No. 3:23-cv-1098 (VAB) |

**RULING AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

Osvaldo Ramos ("Mr. Ramos" or "Plaintiff") has sued AmGuard Insurance Company ("AmGuard" or "Defendant") for breach of contract ("First Count"), negligence ("Second Count"), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurances Practices Act ("CUIPA"). Not. of Removal, ECF No. 1-2 (Aug. 18, 2023) ("Compl.").

Defendant has moved for judgment on the pleadings as to second and third counts of the Complaint. Mot. for J. on the Pleadings, ECF No. 19 (Oct. 20, 2023) ("Mot.").

For the following reasons, the Court **GRANTS** Defendant's motion for judgment on the pleadings.

To the extent that Mr. Ramos can remedy the deficiencies in the factual allegations in his Complaint, he may move for leave to amend the Complaint by **September 20, 2024**.

I.     **FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

    A. <u>Factual Allegations</u>

On July 20, 2022, Mr. Ramos purchased a property insurance policy from AmGuard, insuring his residence in Meriden, Connecticut and himself against covered losses from July 20,

1

2022 to July 20, 2023. Compl. at 4 ¶¶ 1, 3–4.[1]

On August 22, 2022, there was a fire at Mr. Ramos's residence that allegedly caused real and personal property damage. *Id*. at 5 ¶¶ 6–7. Mr. Ramos alleges that the claim arising from the fire is a covered loss under the policy. *Id*. ¶ 8.

As of the date of the Complaint, AmGuard has paid Mr. Ramos a total of $2,196.13 toward his claim, despite the covered damages and covered repairs allegedly exceeding the amount paid. *Id*. ¶¶ 11–13.

Mr. Ramos alleges that he provided timely notice of his loss and complied with the terms and conditions of his insurance policy, yet AmGuard has refused to pay him fully for his loss. *Id*. at 6 ¶¶ 17–18.

B. <u>Procedural History</u>

On July 26, 2023, Mr. Ramos filed his Complaint in Connecticut Superior Court Judicial District of New Haven. Compl.

On August 18, 2023, AmGuard removed the case to this Court. Not. of Removal, ECF No. 1 (Aug. 18, 2023).

On May 5, 2023, AmGuard filed its Answer. Answer, ECF No. 16 (Aug. 30, 2023) ("Answer").

On October 20, 2023, AmGuard filed a motion for judgment on the pleadings. Mot.; Mem. of L. in Support of Mot. for J. on the Pleadings, ECF No. 19-1 (Oct. 20, 2023) ("Mem.").

On November 10, 2023, Mr. Ramos filed a memorandum of law in opposition to Defendant's motion for judgment on the pleadings. Mem. of L. in Opp'n to Mot. for J. on the Pleadings, ECF No. 20 (Nov. 10, 2023) ("Opp'n").

---

[1] As Mr. Ramos's Complaint does not use consecutive numbering, the Court will cite to the Complaint by page and paragraph number.

On November 24, 2023, AmGuard filed a reply in support of its motion for judgment on the pleadings. Reply in Support of Mot. for J. on the Pleadings, ECF No. 21 (Nov. 24, 2023) ("Reply").

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court applies the same standard applicable to motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted, such that it should be entitled to offer evidence to support its claim. *See id.* (citation omitted).

While a court must accept as true the allegations in a complaint, this requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

In determining a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them." 2 Moore's Federal Practice 3D § 12.38 (2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a court need not convert a motion to dismiss into a motion for summary judgment when it considers "'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference'" and noting that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint'") (quoting *Int'l Audiotext Network, Inc. v. am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

Motions for judgment on the pleadings are especially appropriate in contract cases, where the case turns on legal interpretations of the obligations of the parties. *Ricatto v. M3 Innovations Unlimited, Inc.*, No. 18 CIV. 8404 (KPF), 2019 WL 6681558, at *4 (S.D.N.Y. Dec. 6, 2019). "If the allegations of a pleading 'are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading].'" *Id.* (quoting *In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 171 (S.D.N.Y. 2015)). "If the contract is unambiguous, the Court may award judgment on the pleadings, assuming no material facts are in dispute." *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016).

### III.  DISCUSSION

AmGuard argues that the second and third counts, for negligence and CUTPA/CUIPA violations respectively, fail to state a claim upon which relief can be granted and should be

dismissed under Rule 12(c) of the Federal Rules of Civil Procedure. Mem. at 6.

The Court will address the second and third counts of the Complaint in turn.

### A. The Negligence Claim

"An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." *Gazo v. City of Stamford*, 765 A.2d 505, 515 (Conn. 2001). "It is true, of course, that out of a contractual relationship[,] a tort liability, as in negligence, may arise." *Id*. at 515 (quoting *Kaplan v. Merberg Wrecking Corp.*, 207 A.2d 732, 736 (Conn. 1965)).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Doe v. Saint Francis Hosp. & Med. Ctr.*, 72 A.3d 929, 947 (Conn. 2013) (quoting *Ryan Transportation, Inc. v. M & G Associates*, 832 A.2d 1180, 1184 (Conn. 2003)).

AmGuard argues that Mr. Ramos's negligence cause of action is based wholly on the alleged breach of contract and that the Complaint fails to allege even threadbare recitals of the elements of negligence. Mem. at 8.

In response, Mr. Ramos urges the Court to resolve a split of authority and find that the economic loss doctrine does not bar tort claims brought by an individual policyholder, and thus allowing him to maintain a negligence claim arising from a contract claim against an insurance company. Opp'n at 4–5. Mr. Ramos further argues that his negligence claim is separate and distinct from his breach of contract claim. *Id*. at 3.

The Court disagrees.

Though the Connecticut Supreme Court has not directly answered this question, it has made clear that "[u]nless a particular conflict between the rules of contract and tort requires

otherwise, a plaintiff may choose to proceed in contract, tort, or both." *Stowe v. Smith*, 441 A.2d 81, 84 (Conn. 1981). Additionally, both the District of Connecticut and several Connecticut Superior Courts have recognized negligence claims in cases concerning denial of coverage. *See Corner House Condo. Ass'n v. State Farm & Cas. Co.*, No. HHD-CV-13-6068831-S, 2018 WL 2418969, at *3 (Conn. Super. Ct. May 10, 2018) (denying motion to strike a negligence claim against an insurance company for refusing to fully compensate the plaintiff for the damage to their property); *Smith v. Home State Ins. Co. Spc.*, No. 3:10-CV-1046 (RNC), 2013 WL 12284914, at *1 (D. Conn. Mar. 31, 2013) (denying summary judgment where an insurance company alleged that plaintiff could not recover on a theory of negligence against the company); *Afifi v. Standard Fire Ins. Co.*, No. NNH-CV-11-6017083-S, 2011 WL 5307371, at *3–4 (Conn. Super. Ct. Oct. 21, 2011) (explicitly rejecting the argument that a negligence claim could not be brought against the insurance company, because a duty of care may arise); *Razor's Auto Body & Servs., LLC*, CV-09-5010129S, 2009 WL 2872848, at *2 (Conn. Super. Ct. Aug. 11, 2009) (permitting both negligence and breach of covenant of good faith and fair dealing claims to proceed in a case concerning denial of coverage) (quoting *Hutchinson v. Farm Fam. Cas. Ins. Co.*, 867 A.2d 1, 7 n.4 (Conn. 2005)).

Thus, the Court turns to whether Mr. Ramos has sufficiently alleged the elements of a negligence claim.

In his Complaint, Mr. Ramos realleged the facts alleged in the first count—the breach of contract claim—and alleges the following additional facts:

> AmGUARD was negligent in the adjustment and handling of the Claim in that:
> a. It negligently hired, monitored, and/or supervised its agents, servants, and employees who conducted inspections, appraisals, and evaluations of the subject premises and the damages associated with the Plaintiff's

6

>  loss. Specifically, AmGUARD negligently supervised its agents, servants, and employees who evaluated the loss in that it did not adequately or timely perform post-loss inspections, and respond to the Plaintiff concerning the August 22, 2022 Claim.
>  b. It failed to timely respond to and assist the Plaintiff.
>  c. It failed to take steps to ensure that the premises would not become further damaged.
>  d. It negligently created issues in an effort to try and find a basis in the policy to not pay the Claim.

Compl. at 6 ¶ 15. Mr. Ramos also alleges that he was "damaged and harmed" as a result of AmGuard's negligence. *Id*. ¶ 16.

Mr. Ramos has not alleged any duty—contractual, statutory, or otherwise—but rather, he asserts that AmGuard was negligent in the handling of his claim and that he was harmed by that negligence. In failing to allege any duty owed to him by AmGuard, Mr. Ramos has failed to sufficiently allege a negligence claim. *Cf. Rose v. United Prop. & Cas. Ins. Co.*, No. 3:21-CV-01217 (VAB), 2022 WL 4115635, at *7 (D. Conn. Sept. 9, 2022) (finding moot "any arguments concerning Plaintiffs' failure to sufficiently allege all of the elements of a negligence claim" where the plaintiffs added allegations to their proposed Amended Complaint that the defendant owed its insureds a duty of good faith, among other things); *see also id*., ECF No. 28-1 ¶¶ 22, 33 (Dec. 16, 2021).

Accordingly, the Court will grant Defendant's motion for judgment on the pleadings as to the second count of Mr. Ramos's Complaint.

### B. The CUTPA/CUIPA Claim

A plaintiff may bring a private cause of action under the Connecticut Unfair Trade Practices Act, "CUTPA," to enforce alleged violations of the Connecticut Unfair Insurance Practices Act, "CUIPA." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-CV-879 (VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015) (citing *Mead v. Burns*, 509 A.2d 11, 17–18 (Conn.

1986)). CUTPA/CUIPA claims "are premised on finding a breach of contract." *Kim v. State Farm Fire & Cas. Ins. Co.*, 751 Fed. Appx. 127, 128 n.1 (2d Cir. 2018); *Roberts*, 264 F. Supp. 3d at 416 ("Similarly, 'a claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract.'"); *Zulick v. Patrons Mut. Ins. Co.*, 949 A.2d 1084, 1091 (Conn. 2008) ("The foregoing analysis disposes of the plaintiffs' claim that the trial court improperly rendered summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims. Because we have concluded that the defendant's interpretation of the policy's coverage limitation was correct, there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statutes.").

In determining whether a practice violates CUTPA, the criteria set out in the Federal Trade Commission's so-called cigarette rule guides the inquiry:

> (1) '[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
> (2) whether it is immoral, unethical, oppressive, or unscrupulous;
> (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].'

*Zulick*, 949 A.2d at 1092 n.11 (quoting *Ventres v. Goodspeed Airport*, LLC, 881 A.2d 937, 969 (Conn. 2005)).

"CUIPA identifies and prohibits a number of 'unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.'" *Kim*, 2015 WL 6675532, at *5 (citing Conn. Gen. Stat. § 38a-316.) "Among these are '[u]nfair claim settlement practices' such as 'not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id.* (quoting Conn. Gen. Stat. § 38a-316(6)(F)).

8

To prevail on a CUIPA claim, a plaintiff must show that "the unfair settlement practice was committed or performed with such frequency as to indicate a general business practice." *McCulloch v. Hartford Life & Accident Ins. Co.*, 363 F. Supp. 2d 169, 182 (D. Conn. 2005).

AmGuard argues that Mr. Ramos failed to allege that AmGuard's engaged in proscribed conduct with sufficient frequency to indicate general business practice and that Mr. Ramos was subjected to said conduct. Mem. at 10–11.

In response, Mr. Ramos argues that he intends to further develop this claim through the discovery process, however, he has alleged the necessary elements of a CUTPA/CUIPA claim. Opp'n at 7.

The Court disagrees.

In his Complaint, Mr. Ramos alleges the following:

> AmGUARD has committed, and continues to commit, the acts referred to below as to the Plaintiff and as to other AmGUARD insureds and policyholders with such frequency as to constitute a general business practice of insurance misconduct in violation of CUPIA [sic] which violation constitutes a CUTPA violation:
> a. Misrepresenting pertinent facts at issue with respect to the Claim and with respect to policyholders which arise under insurance policies issued by AmGUARD.
> b. Failing to acknowledge and act with reasonable promptness upon communications with respect to the Claim and with respect to the claims of other policyholders which arise under insurance policies issued by AmGUARD.
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies with respect to the Plaintiff's Policy and with respect to policies issued to other AmGUARD policyholders.
> d. Refusing to pay claims and not conducting a reasonable investigation based upon all available information with respect to the Claim and with respect to claims of other policyholders which arise under AmGUARD issued insurance policies.
> e. Failing to act in good faith to effectuate prompt, fair, and

9

    equitable settlements of claims in which liability has become reasonably clear with respect to the Claim and with respect to claims of other AmGUARD policyholders arising under AmGUARD policies.
 f. Conducting an investigation with a view towards ignoring evidence or information which would tend to show that the Claim and claims of other policyholders which arise under AmGUARD issued insurance policies should be paid and honored.
 g. Focusing on creating, fabricating, or trying to obtain information to deny or delay the payment of the Claim and claims of other policyholders.
 h. Compelling insureds, including Plaintiff, to institute litigation or other proceedings to recover amounts due under an insurance policy by substantially underpaying the claims.
 i. Failing to comply with reasonable requests for information requested by the Plaintiff or their agents and other insurers or their agents.
 j. Unduly narrowly interpreting insurance policy provisions in an effort to delay or deny claims instead of analyzing such provisions with a view toward being fair and reasonable to its insureds.
 k. Withholding pertinent information in an effort to use said information as grounds to delay or ignore the Claim and the claims of other policyholders.
 l. Failing to conduct a reasonable investigation based upon all available information with respect to the Claim and with respect to the claim of other policyholders.

Compl. at 8–10 ¶ 22. Mr. Ramos also cites to seven lawsuits alleging that it evidences the frequency at which AmGuard has committed the alleged acts. *Id*. at 10–11 ¶ 23.

  Mr. Ramos asserts twelve CUIPA violations, six of which are generally recitations of the unfair settlement practices enumerated in Conn. Gen. Stat. §§ 38a-816(6)(A)–(D), (F), (G). And none of the twelve allegations of misconduct "allege specific conduct Defendant engaged in corresponding with each violation." *Bilyard v. Am. Bankers Ins. Co. of Fla.*, No. 3:20CV1059 (JBA), 2021 WL 4291173, at *3 (D. Conn. Sept. 21, 2021).

  In his Complaint, Mr. Ramos alleged that he "ha[d] diligently satisfied his obligations

under the Policy, following up and attempting to communicate with AmGUARD via emails and phone calls, providing AmGUARD with the requested information, and attempting to resolve this matter[,]" but that Defendant had "fail[ed] to act in good faith and adequately respond to the Plaintiff." Compl. at 6 ¶¶ 14–16. This, however, adds little more to the statutory language in §§ 38a-816(6)(B) and (F). And Mr. Ramos's "CUIPA claim must allege not only that Defendants engaged in a business practice of prohibited conduct as defined by the statute but also that Defendant subjected him to that conduct." *Bilyard*., 2021 WL 4291173, at *4.

Additionally, in *Belz v. Peerless Ins. Co.*, the court identified factors to be considered in determining whether a plaintiff has made facially plausible factual allegations of a general business practice. 46 F. Supp. 3d 157, 166 (D. Conn. 2014) ("Relevant factors may include: the degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices."). Mr. Ramos, however, has not set forth the factual allegations necessary to assess any of these factors—in other words, assess the similarity between the conduct that Mr. Ramos's alleges that he faced and the conduct by the alleged victims in the cases Mr. Ramos includes in his Complaint. *See also Klaneski v. State Farm Mut. Auto Ins. Co.*, No. 3:22-cv-1456 (VAB), 2023 WL 4304928, at *7 n.2 (noting that courts in this District have dismissed CUIPA/CUTPA claims that might survive in state court because of the application of "the standard announced in *Iqbal* and *Twombly*, which requires more than the bare conclusory allegations accepted by the state court." (citation and internal quotation marks

omitted)).

Accordingly, the Court will grant Defendant's motion for judgment on the pleadings as to the third count of Plaintiff's Complaint.

## IV.     CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's motion for judgment on the pleadings.

To the extent that Mr. Ramos can remedy the deficiencies in the factual allegations in his Complaint, he may move for leave to amend the Complaint by **September 20, 2024**.

If no proposed amended pleading is filed by that date, the Court will dismiss the Second and Third Counts of Mr. Ramos's Complaint.

**SO ORDERED** at New Haven, Connecticut, this 30th day of August, 2024.

                                                    */s/ Victor A. Bolden*
                                                    Victor A. Bolden
                                                    United States District Judge